## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **CHRISTOPHER GROSS, as an individual and on behalf of others similarly situated,** Plaintiff, | **Case No.:** |
| **v.** | **COMPLAINT** |
| **LOANCARE LLC and CIT BANK NA d/b/a ONEWEST BANK FSB, a subsidiary of CIT GROUP INC.,** Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff, Christopher Gross, by and through his attorney, Abel L. Pierre, Esq., as and for

his complaint against the Defendant LOANCARE LLC ("LoanCare") and CIT Bank NA d/b/a

OneWest Bank FSB ("CIT"), alleges as follows:

### INTRODUCTION

1.  This is an action for damages brought by an individual consumer for Defendants' violation
    of the Fair Debt Collection Practices Act 15 U.S.C. § 1692, *et seq.* ("FDCPA") which
    prohibits debt collectors from engaging in abusive, deceptive and unfair practices. The
    violations include but are not limited to the following:

    a.  Correspondence and harassment designed to obtain money on a debt that did not
        exist and/or that was not owned by any party related tot eh actions undertaken as a
        debt collector.

    b.  Correspondence and harassment directly with Plaintiff despite knowledge that
        Plaintiff was represented by counsel.

1

    c.   Correspondence, notices and harassment designed to deceive the Plaintiff about the status, ownership and right to administer, collect or enforce an alleged debt.

2.   This is also an action for actual, statutory and punitive damages, costs and attorney's fees brought pursuant to the New York General Business Law NY GBS § 380, *et. seq.* and for the common law tort of defamation and defamation of title.

3.   Plaintiff seeks monetary civil damages, monetary civil penalties, statutory damages, permanent injunction, restitution, disgorgement and other equitable relief against the named Plaintiffs and reserves the right to name additional defendants, after receipt of responses to discovery demands, and after a court order allowing amendment, of third parties emerge as real parties in interest, including but not limited to the current successor bookrunner investment banks claiming authority over the securitization scheme, of which Plaintiff's transaction was a part thereof.

## **JURISDICTION**

4.   This Court has jurisdiction pursuant to 15 U.S.C. § 1692k ("FDCPA") and 28 U.S.C. § 1331.

5.   The Plaintiff is a natural person and resident of the State of New York.  He is a "consumer" as defined by 15 U.S.C. § 1692a (3).

6.   Defendants transact business in the State of New York. Defendant CIT has apparent authority to represent Defendant Loan Care and is registered to conduct business and has appointed a registered agent in the State of New York. Loan Care has apparent authority to represent CIT and transacts business in the State of New York. Therefore, personal jurisdiction is established.

7.  Venue is proper in the United States District Court for the Southern District of New York under 28 U.S.C. § 45(a)(1) and 15 U.S.C. § 53(b).

## ALLEGATIONS AS TO PARTIES

8.  Plaintiff is a natural person residing in Queens County, New York.

9.  The term "consumer" as used in this complaint means any natural person obligated or allegedly obligated to pay any debt, as "debt" is defined in Section 803(5) of the FDCPA, 15 U.S.C. § 1692a(5).

10. The term "local information" as used in this complaint means a consumer place of abode and the consumer's telephone number at such place or the consumer's place of employment as defined in Section 803(7) the FDCPA, 15 U.S.C. §1692a(7).

11. Upon information and belief Defendant LoanCare is a foreign limited liability company formed under the laws of the State of Virginia and authorized to do business in the State of New York through its registered offices at the CT Corporation System Inc. at 28 Liberty Street, 42nd Floor, New York 10005.

12. Upon information and belief Defendant LoanCare is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), doing substantial and material business in Queens County, New York and the State of New York.

13. At all times material to this complaint, Defendants have maintained substantial course of trade in or affecting commerce as "commerce" is defined in Section 4 of the FTC Act 15 U.S.C. § 44.

14. LoanCare is or was engaged in the collection of debts from consumers and regularly attempts to collect consumer debts alleged to be due to another.

15. Upon information and belief, Defendant CIT is a subsidiary of CIT Group Inc., a financial institution headquartered in Pasadena, California, that did transact, and does now presently transact business in the State of New York.

16. Upon information and belief Defendant CIT is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), doing substantial and material business in Queens County, New York and the State of New York.

17. CIT is or was engaged in the collection of alleged debts from consumers and regularly attempted to collect alleged consumer debts.

   a. Said allegations of the existence of an underlying obligations and legal debt arose from transactions with the Federal Deposit Insurance Corporation (FDIC) in 2008 when the predecessor of CIT (One West, LLC) was formed under emergency conditions after the collapse of IndyMac Bank. Under the terms of the FDIC receiver agreement with OneWest, under the direction of Steven Mnuchin, president, CIT was permitted to submit "claims" for "losses" on transactions labeled as loans regardless of whether a loss was sustained by OneWest or not.

   b. OneWest later known as CIT, did file such claims and was paid, producing large profits that were disbursed to the principals of OneWest consisting of a few large investors who had become wealthy mostly in the technology sector. It is unclear whether such investors ever paid any money and therefore unclear whether OneWest was ever capitalized to complete the transaction, but in any event documents were executed in which OneWest now known as CIT acquired the servicing business of IndyMac.

c.  Further, most IndyMac loans were guaranteed by Federal National Mortgage Association (FNMA or Fannie Mae or Fannie) or were subject to some profit participation agreement with the originating book runner investment bank(s). Upon information and belief Fannie did make payment to OneWest now known as CIT to satisfy claims that were also not related to loss on Plaintiff's transection documents but nonetheless represented set off to the potential alleged balance due if there was any creditor who could or would claim ownership of a loan account receivable from Plaintiff.

d.  IndyMac had been in the business of originating loans for the purpose of selling them to stockbrokers (investment banks) who later claimed to have securitized the alleged loans into trust certificates that were falsely labeled as mortgage-backed securities. While investors who bought such certificates were relying upon a promise to pay issued by the stockbroker, they were also relying on the fulfillment of that promise through funding from payments the stockbrokers received from homeowners, including Plaintiff herein. However, such certificates conveyed no right, title or interest to any obligation, legal debt, note or mortgage.

   i.  Upon information and belief derived from reports forensic investigators, the stockbroker and/or investment bank was Lehman Brothers, who declared bankruptcy in the Southern District of New York in October of 2008. The schedules submitted by Lehman did not reflect any interest or liability arising out of any transaction with Plaintiff. The same is true for IndyMac which was put into receivership a few weeks before Lehman declared bankruptcy.

    ii.  Lehman in turn was using the data from transactions, including that of Plaintiff herein, to sell securities to investors based upon projected risks and movement in the trading value of certificates issued to investors as asset backed securities. Such certificates were neither asset backed nor instruments that could be regulated under law as securities because they were specifically exempted from securities regulation when the Glass Steagall Act was repealed.

    iii.  The structure thus created by securitization produced the creation, issuance, sale, trading and hedging of securities that were not based on any ownership or loss arising from Plaintiff's transaction --- not has any allegation ever been made by Defendants herein that about ownership or payment for the alleged underlying obligation that was de facto extinguished by the securitization process, thus eliminating the risk of loss to anyone from any transaction labeled as a loan. In plain language, no person or business entity claims to have ownership of any obligation allegedly owed by Plaintiff and no person or entity is claiming any financial loss derived from ownership of the transaction with Plaintiff.

e.  Neither OneWest nor CIT ever paid consideration for ownership of any underlying obligation owed by Plaintiff to any party. Neither CIT nor OneWest ever maintained a loan account receivable as an asset on their own financial records in accordance with standard bookkeeping or accounting methods known as Generally Accepted Accounting Principles (GAAP).

f.  Despite their debt collection activities, neither CIT nor LoanCare ever functioned as a servicer for receipt and disbursement of funds obtained from homeowners or the forced (foreclosure) sale of their property (including Plaintiff) or to creditors (investors).

   i.  Payments directed to either CIT (fka OneWest) or LoanCare are subject to lockbox contracts with third parties who serve the bookrunner investment bank currently controlling the scheme described herein.

   ii.  Such payments are neither deposited to any depository account owned or controlled by said defendants nor do said defendants witness or record any such receipts or disbursements from the proceeds of receipts.

   iii.  Notwithstanding the above, the Defendants have encouraged the Plaintiff and all others who were in similar contact with Defendants to erroneously regard or reasonably believe that the CIT or LoanCare was a lender or creditor and/or that they represented as agent the interests of a creditor who had paid value for the underlying obligation in exchange for ownership of the obligation, debt, note or mortgage.

   iv.  Such actions violated and barred Plaintiff from his rights to contact, inquire, settle and payoff any alleged loan receivable account held of any creditor.

g.  Neither CIT nor LoanCare ever suffered any financial loss arising out of the Plaintiff allegedly missing a scheduled payment.

h.  Notwithstanding the above, the Defendants have been conducting a widespread national business in which they took advantage of a void created by public and judicial confusion about the meaning of "securitization of debt," and claimed to be

7

the credible and competent source of information on the existence, ownership and rights to administer, collect and enforce the underlying debt as set forth in New York Statutes adopting Article 9 § 203 of the Uniform Commercial Code setting forth the condition precedent to enforcement, to wit: payment of value for the underlying obligation.

i.  Besides the large payments received from the Federal Government via the FDIC, OneWest, now known as CIT, had huge profits arising out of foreclosures of property to satisfy nonexistent debts that were never owned or paid for by that company and outsourced enforcement for plausible deniability to companies like LoanCare in this instance.

j.  From their various offices and addresses, Defendants regularly engage in debt collection activities throughout the United and States including New York State, using telephone, U.S. mail, and other instrumentalities of interstate commerce.

18. Upon information and belief, on a date better known by Defendants, Defendants began to attempt to collect an alleged consumer debt from Plaintiff. Such efforts probably began simultaneously with the apparent transfer of apparent authority to service the accounts labeled as loans that had been originated, but which were not owned by IndyMac. By the time such efforts began, the alleged debt was not claimed by any entity as an asset and therefore there were no claimants that could make a factual or legal claim of financial injury arising from Plaintiff's conduct or lack of conduct.

19. Defendants are subject to jurisdiction in the State of New York and venue of this district pursuant to New York Long Arm jurisdiction statute through the causation of injury in the state by acts or omissions inside and outside of the State of New York.

**FACTUAL ALLEGATIONS**

20. Plaintiff adopts and realleges the foregoing as fully restated herein.

21. On or about August 22, 2007, Plaintiff made an application to obtain a home equity line of credit (HELOC) in the principal amount of one hundred thousand dollars ($100,000.00) with IndyMac Bank, FSB ("IndyMac").

   a. Although a HELOC is different than a purchase money mortgage or refinancing of a prior first mortgage lien, in the world of finance, it receives the same treatment as any other "loan agreement."

   b. In this case, IndyMac was solely originating transactions with homeowners under the guise of a "loan agreement" whose data, not the ownership, was used for purposes of issuing securities and contracts, most of which did not involve disbursing or receiving any money from any homeowner.

   c. Under the terms of those securities and contracts, no party had any risk of loss arising from not receiving a scheduled payment from the Plaintiff in accordance with the terms of the promise to pay contained within a promissory note issued by Plaintiff.

   d. Starting with IndyMac the goal was to remove any party from being or acting as a lender as defined by lending statutes, and to evade required compliance with lending statutes.

   e. The ultimate effect was to present a loan agreement to Plaintiff, which is what he wanted, without a lender, which is not what he wanted.

   f. IndyMac and subsequent players all concealed the fact that all profits or nearly all profits were intended by IndyMac and claimed successors to "servicing" or

"ownership" to be generated from the sale of securities rather than the production of a loan transaction.

g. These facts changed the fundamental dynamic of the transaction into which the Plaintiff was lured --- the counterparty was operating for a fee and not at any risk of loss and not with intention of complying with lending statutes that required due diligence, responsibility for viability of the transaction, including but not limited to a true and valid appraisal of the subject property based on values and standards utilized by the same institutions when they made actual loans.

h. Any pretense of a loan account receivable was extinguished in this process because no party wanted to be considered a "lender" responsible for paying fines or damages relating to compliance with lending statutes.

i. Instead, an additional party was added to the process who would be designated as a servicer despite the fact that it provided no servicing functions relating to receipts or disbursements.

ii. The designated servicer (CIT and LoanCare herein) would then allow its name to be used for call centers and the issuance and mailing of correspondence, statements, notices and, for purposes of "enforcement," a Payment History Report that is commonly presented as a business record of CIT or LoanCare despite the fact that it is not prepared by the Defendants and the data presented was entered by employees of third parties who were not under the control or administration of the Defendants.

iii. Thus, all inquiries to either CIT or LoanCare were met with evasion, avoidance, misrepresentation, deceit, and the completely factual and legal

        inability to resolve any issue or report on the true status of any current obligation owed by Plaintiff.

    iv.  Defendants were acting within the customs and standards of the finance industry, to wit: it was customary and standard to conceal the true nature and full scope of the transaction that was originated with the homeowner (including Plaintiff herein) and it was custom and practice of the industry to conceal the current nature and scope of the remaining attributes of the homeowner's transaction (including Plaintiff herein).

22. Said application to IndyMac was "approved" although it is difficult to determine from whence such approval arrived or who approved it. At the time, upon information and belief, the entire transaction was controlled by Lehman Brothers.

23. The transaction was presented to Plaintiff as a HELOC transaction with an identifiable lender, but it is doubtful, upon information and belief that the funding for the transaction came from IndyMac, who was selling all loan applications forward before any transaction was completed.

24. Said HELOC was recorded on or about September 20, 2007, with the NYC Department of Finance, Office of the City Register, CRFN# 2007000483547.

25. On or about March 15, 2010, an assignment of mortgage was purported to assign the original HELOC to OneWest Bank, FSB, a division of Defendant CIT. No consideration was paid.

26. This purported March 15, 2010, assignment was recorded with the Queens County Registry's Office on or about April 9, 2010.

27. It is important to note that the original loan was a home equity line of credit, <u>not</u> a conventional mortgage.

28. On or about April 14, 2017, Plaintiff sent to Defendant CIT a Qualified Written Request under Section 6 of the Real Estate Settlement Procedures Act, requesting among other things, specific itemized information about the accounting and servicing of the loan.

29. On or about April 28, 2017, CIT responded to Plaintiff's request by forwarding copies of a breakdown of corporate advance fees on the account, original HELOC agreements, loan history, customer account activity statement, various invoices, appraisal, appraisal report, a letter on OneWest Bank Mortgage Servicing's letterhead dated August 3, 2015, an undated letter from Defendant CIT, and a Settlement Statement.

30. CIT's April 28, 2017 letter was the last correspondence Plaintiff received from Defendant CIT.

31. LoanCare sent Plaintiff a letter dated March 21, 2018, entitled "Notice of Servicing Transfer of Home Equity Line of Credit", informing him that LoanCare would be subservicing his HELOC. The notice did not come from anyone claiming to be a creditor nor even CIT or OneWest.

    a. Said notice was false and was presented as part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

32. LoanCare subsequently sent Plaintiff another letter dated March 29, 2018, titled "Debt Validation Letter", relaying to Plaintiff how much he owed on his "mortgage loan", not the HELOC.

a.  Said reply was false and was presented as part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

33.  On or about April 18, 2018, Mr. Gross sent to LoanCare a validation of debt request pursuant to the FDCPA, a request for information related to its alleged servicing of the loan pursuant to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act, and a request for payoff balance Regulation Z of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act.

34.  On or about June 4, 2018, LoanCare responded to Plaintiff's requests by forwarding copies of its March 21, 2018 letter, a consumer authorization for auto draft payment option, and the original HELOC agreements.

a.  Said response was false and was presented as part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

35.  LoanCare never forwarded any documents that would establish the chain of title to allow LoanCare or the purported holder in due course to establish a legal right to collect money.

a.  Said concealment was part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

36. On or about October 1, 2019, Mr. Gross sent to LoanCare, a request for information related to its servicing of the loan pursuant to Regulation X of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act.

37. LoanCare responded with a letter dated October 7, 2019, relaying to Plaintiff the supposed current owner of the note --- but not the underlying obligation.

   a. Said response was false and was presented as part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

38. Again, LoanCare never forwarded any documents that would establish the chain of title to allow any purported holder in due course to establish title. In fact, contrary to normal and customary practice, no allegation has been made as to the existence of any holder in due course, which would require that the creditor named paid value for the underlying obligation or the note in good faith and without knowledge of the alleged "borrower" defenses.

   a. Upon information and belief, the reason for this glaring omission was and remains (a) no such party exists (b) the obligation no longer exists and (c) the defendants are concealing an illegal scheme to profits off of their knowledge about Plaintiff's transaction rather than the ownership of it.

   b. All of the responses from LoanCare and the lack of response from CIT are violations of duties in the above stated statutes and duties contained in the Real Estate Settlements Procedures Act (RESPA) 12 U.S.C. § 2607.

39. On or about June 8, 2020, Mr. Gross sent to LoanCare a validation of debt request pursuant to the FDCPA, and a request for payoff balance Regulation Z of the Mortgage Servicing Act as amended by the Consumer Financial Protection Bureau pursuant to the Dodd Frank Act.

40. On or about June 29, 2020, LoanCare responded to Plaintiff's requests by forwarding copies of a notice of servicing transfer dated February 8, 2018, the original HELOC agreements, loan history, account history (from 2018 to 2020), and payoff statement.

    a. Said response was false and was presented as part of the pattern of deceit and concealment of the nature and scope of the remaining attributes of Plaintiff's transaction in which IndyMac was named as lender but who probably did not fulfill the attributes of a lender, as the term is conventionally understood or intended.

41. Again, LoanCare never forwarded any documents that would establish the chain of title to allow the purported holder in due course to establish title.

42. Subsequently, Plaintiff Gross retained the services of the Law Office of Abel L. Pierre, PC ("Law Office") to assist him in dealing with this matter.

43. On or about January 4, 2021, LoanCare was notified that the Plaintiff was represented by counsel.

44. With knowledge that Mr. Gross was represented by an attorney, LoanCare responding directly to Mr. Gross by way of letter dated February 19, 2021. Instead of directing all communication to Plaintiff's counsel, LoanCare instead continued its communication with Plaintiff.

    a. Section 806 of the FDCPA, 15 U.S.C. § 1692d, prohibits debt collectors from engaging in any conduct the natural consequence of which is to harass, oppress,

abuse any person in connection with the attempted collection of money claimed as debt.

b. The behavior of Loan Care on behalf of itself and CIT (and the successor bookrunner investment banks) constitutes conduct the natural consequence of which is to harass, oppress, or abuse persons.

c. Such acts constitute violations of Section 806 of the FDCPA, 15 U.S. C. § 1692d. Pursuant to Section 814(a) of the FDCPA, 15 U.S.C. §16921(a) those acts and practices also constitute unfair and deceptive acts or practices in violation of Section 5(a) of the FTC Act U.S.C. § 45(a).

d. Under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57b, this Court is authorized to issue all equitable and ancillary relief as it may deem appropriate in the enforcement of the FDCPA and the FTC Act, including the ability to order disgorgement of ill-gotten monies.

e. Ill-gotten moneys include but are not limited to money that was received from Plaintiff or the IndyMac-FDIC-OneWest deal and any federal or third-party guarantee payments that were made without rights of subrogation.

45. In light of the facts articulated herein, Defendants utilized false and deceptive means to coerce Plaintiff into making a payment on an alleged debt that was neither owned by nor legally administered by LoanCare nor on behalf of CIT who had suffered no loss in connection with plaintiff's alleged HELOC transaction.

46. In light of the facts articulated herein, Defendants utilized false and deceptive means in an attempt to oppress and harass Plaintiff into paying the debt.

47. In light of the facts articulated herein, Defendants attempted to collect a debt by communicating false representations or utilizing deceptive means.

48. In light of the facts articulated herein, Defendants engaged in collection activity, the purpose of which was to harass the Plaintiff.

49. In light of the facts articulated herein, Defendants utilized false and misleading representations regarding the character, amount, or legal status of the alleged debt.

50. In light of the facts articulated herein, Defendants attempt to collect amounts not authorized by an agreement creating the alleged debt or permitted by law.

51. In light of the facts articulated herein, Defendant LoanCare attempted to collect a debt after it knows the consumer to be represented by an attorney and there was no consent from Plaintiff's attorney to communicate with the Plaintiff directly.

52. Defendant's activity on these occasions were a communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(2), 1692d, 1692e, 1992e(2), 1692e(10), 1692f and 1692f(1), amongst others.

53. Plaintiff commenced this action within one year of the unlawful actions and/or within one year of reasonably knowing of the unlawful actions of Defendants.

## PRACTICES OF DEFENDANTS

54. It is or was the policy and practice of Defendants to collect monies from homeowners who were labeled as mortgagees without establishing the chain of title and without proving their authority or right to collect monies from any underlying obligation that was falsely implied to be the foundation for enforcement said mortgagees.

   a. After the original transaction with IndyMac, no party ever claiming to be a successor to IndyMac ever paid value for the underling obligation as required by

Article 9 § 203 of the Uniform Commercial Code as adopted verbatim by New York State statutes.

b.   No transaction ever occurred in which the legal debt, note or mortgage was ever purchased or sold for value.

c.   Notwithstanding the above, and without regard to the truth regarding the existence, ownership and right to administer, collect or enforce any alleged obligation from Plaintiff, the Defendants continued to bob and weave and deceive as they used coercion, duress and harassment to squeeze money from the Plaintiff as homeowner.

55. It is or was the policy and practice of the Defendants to collect monies from mortgagees who may or may not owe a debt.

56. Said practices and policies of Defendants are deceptive representations, which contradicts the mortgagees' rights.

57. That the Defendants continuously intentionally and knowingly and/or carelessly and recklessly cause these false, misleading collection attempts on a mass scale for sole purpose of harassing consumers and coercing payment and collecting debts which they know or should know that the mortgagees do not owe or have otherwise satisfied.

58. Defendants' conduct violates 15 U.S.C. § 1692 *et seq*., including but not limited to subsections (d), (e), and (f) in the representations made by the Defendants are abusive, false, confusing, misleading, deceptive, unfair and fail to advise the consumer of his legal rights as required by law.

59. That as per 15 U.S.C. § 1692 et seq. and as a result of the above violation, Defendants are liable to the Plaintiff for actual damages in the form of humiliation, embarrassment,

disruption of financial security and stability pursuant to 15 U.S.C. § 1692k(a)(1); and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

## **ALLEGATIONS OF LAW**

60.  Defendants' conduct violates 15 U.S.C. § 1692 et seq., including but not limited to subsections (d), (e) and (f) in the representations made by the Defendants are abusive, false, confusing, misleading, deceptive, unfair and fail to advise the consumer of his/her legal rights as required by law.

61.  That as per 15 U.S.C. § 1692 et seq. and as a result of the above violations, Defendants are liable to the Plaintiff for actual damages pursuant to 15 U.S.C. § 1692k(a)(1); and statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3), from each and every Defendant herein.

62.  Defendants' conduct violates GBL § 349(a) in the representations made by the Defendants are abusive, false, confusing, misleading, deceptive, unfair and fail to advise the consumer of his/her legal rights as required by law.

63.  As per NY GBL § 349(a) and as a result of the above violations, Defendants are liable to the Plaintiff for actual damages, costs, and reasonable attorneys' fees pursuant to NY GBL 349(h) from each and every Defendant herein.

Plaintiff was damaged by the Defendants' conduct insomuch as experiencing worries and concerns and significant emotional harm as a result of Defendants' conduct in willfully violating the law. The circumstances surrounding the violation make it obvious that a

19

reasonable person would suffer significant emotional harm.

(a) Defendants violated the FDCPA as described above, with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)A).

(b) Each instance within five (5) years preceding the filing of this Complaint (and within two years) in which Defendants failed to comply with the FDCPA in one or more of the ways described above constitutes a separate violation for which Plaintiff seeks monetary civil penalties and damages.

(c) Section 5(m)(1)(A) of the FTC Act, and 15 U.S.C. § 45(m)(1)A), and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C.§ 2461, as amended, authorizes this Court to award damages of civil penalties of not more than $11,000 for each violation of the FDCPA before February 10, 2009, and not more than $16,000 for each violation of the FDCPA after that date.

## COUNT I

### Violation of § 1692c(a)(2) Of the FDCPA – After it knows the consumer to be represented by an attorney unless attorney consents or is unresponsive

64. Plaintiff adopts and realleges the foregoing as fully stated herein.

65. Section 1692c(a)(2) of the FDCPA prohibits a debt collector communicating with a consumer after it knows the consumer to be represented by an attorney unless attorney consents or is unresponsive. _See, 15 U.S.C. § 1692c(a)(2)._

66. Defendant LoanCare's violation of § 1692c(a)(2) of the FDCPA, include, but are not limited to, contacting the consumer directly when they know the consumer is represented

by counsel and said counsel did not consent to Defendant contacting the consumer, in an attempt to collect a debt.

67. Defendant LoanCare's violation of § 1692c(a)(2) of the FDCPA render it liable for statutory damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k.*

68. Defendant LoanCare's actions committed in violation of § 1692c(a)(2) have caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

69. As a direct and proximate result of Defendant LoanCare's deceptive acts and practices committed in violation of § 1692c(a)(2) of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendant LoanCare's abusive attempts to collect a debt.

70. Defendant LoanCare's violation of § 1692c(a)(2) of the FDCPA render it liable for actual damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k(a)(1).*

71. Plaintiff requests that Defendant LoanCare be enjoined from attempting to collect the debt alleged to be owed by him because Defendant LoanCare engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## COUNT II

## Violation of § 1692d Of The FDCPA – Any conduct the natural consequence of which is to harass, oppress, or abuse any person

72. Plaintiff adopts and realleges the foregoing as fully stated herein.

73. Section 1692d of the FDCPA prohibits a debt collector from using any conduct which the natural consequence of which is to harass, oppress or abuse any person. *See, 15 U.S.C. § 1692d.*

74. Defendants' violation of § 1692d of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to demand money or collect money from the Plaintiff.

75. Defendants' violation of § 1692d of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k.*

76. Defendants' actions committed in violation of § 1692d have caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

77. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of § 1692d of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

78. Defendants' violation of § 1692d of the FDCPA render them liable for actual damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k(a)(1).*

79. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him because Defendants engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## COUNT III

### Violation of § 1692e Of the FDCPA – Any other false, deceptive, or misleading representation or means in connection with the debt collection

80. Plaintiff adopts and realleges the foregoing as fully stated herein.

81. Section 1692e of the FDCPA prohibits a debt collector from using any other false, deceptive, or misleading representation or means in connection with the debt collection. See, 15 U.S.C. § 1692e.

82. Defendant's violation of § 1692e of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to demand money or collect money from the Plaintiff.

83. Defendants' actions were false, deceptive and misleading in their attempts to collect this alleged debt.

84. Defendants' violation of § 1692e of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees. _See, 15 U.S.C. § 1692k._

85. Defendants' actions committed in violation of § 1692e caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

86. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of § 1692e of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

87. Defendants' violation of § 1692e of the FDCPA render them liable for actual damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k(a)(1).*

88. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him because Defendants engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## COUNT IV

### Violation of § 1692e(2) Of the FDCPA – False or misleading representations in communications regarding character, amount or legal status of the alleged debt

89.  Plaintiff adopts and realleges the foregoing as fully stated herein.

90. Section 1692e(2) of the FDCPA prohibits a debt collector from misrepresenting the character, amount or legal status of an alleged debt to attempt to collect any amount not authorized by the agreement creating the debt or permitted by law. See, 15 U.S.C. § 1692e(2).

91. Defendants' violations of § 1692e(2) of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to demand money or collect money from the Plaintiff. Defendants' actions were misrepresentations of the legal status of the alleged debt.

92. Defendants' violations of § 1692e(2) of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

93. Defendants' actions committed in violation of § 1692e(2) caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

94. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of § 1692e(2) of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

95. Defendants' violation of § 1692e(2) of the FDCPA render them liable for actual damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k(a)(1).*

96. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him because Defendants engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## **COUNT V**

### **Violation of § 1692e(10) Of the FDCPA – Any false representation or deceptive means to collect a debt or obtain information about a consumer**

97. Plaintiff adopts and realleges the foregoing as fully stated herein.

98. Section 1692e(10) of the FDCPA prohibits a debt collector from communicating any false representation or deceptive means to collect a debt. *See, 15 U.S.C. § 1692e(10)*

99. Defendant's violations of §1692e(10) of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by

the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to

demand money or collect money from the Plaintiff.

100.Defendants' actions in violation of §1692e(10) were clearly false representations and

deceptive means to collect an alleged debt.

101.Defendants' violations of §1692e(10) of the FDCPA render them liable for statutory

damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k.*

102.Defendants' actions committed in violation of § 1692e(10) caused Plaintiff to suffer actual

injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and

attorney's fees.

103.As a direct and proximate result of Defendants' deceptive acts and practices committed in

violation of § 1692e(10)of the FDCPA, Plaintiff was damaged in that he, among other

things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a

debt.

104.Defendants' violations of § 1692e(10) of the FDCPA render them liable for actual

damages, costs, and reasonable attorneys' fees. *See15 U.S.C. § 1692k(a)(1).*

105.Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged

to be owed by him because Defendants engaged in behavior which was harassing or

abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive

towards Plaintiff.

## **COUNT VI**

## **Violation of § 1692f Of the FDCPA – any unfair or unconscionable means to collector attempt to collect the alleged debt**

106.Plaintiff adopts and realleges the foregoing as fully stated herein.

107. Section 1692f of the FDCPA prohibits a debt collector from using any unfair or unconscionable means to collect or attempt to collect the alleged debt. *See, 15 U.S.C. § 1692f.*

108. Defendants' violations of § 1692f of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to demand money or collect money from the Plaintiff.

109. Defendants' actions were clearly unconscionable and unfair in their attempt to collect an alleged debt.

110. Defendants' violations of § 1692f of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k.*

111. Defendants' actions committed in violation of § 1692f caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

112. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of § 1692f of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

113. Defendants' violations of § 1692f of the FDCPA render them liable for actual damages, costs, and reasonable attorneys' fees. *See 15 U.S.C. § 1692k(a)(1).*

114. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him because Defendants engaged in behavior which was harassing or

abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## COUNT VII

### Violation of § 1692f(1) Of the FDCPA – Any collection or attempt to collect any amount not authorized by the agreement creating the debt or permitted by law

115. Plaintiff adopts and realleges the foregoing as fully stated herein.

116. Section 1692f(1) of the FDCPA prohibits a debt collector from using any unfair means to attempt to collect any amount not authorized by the agreement creating the debt or permitted by law. See, 15 U.S.C. § 1692f(1).

117. Defendants' violations of § 1692f(1) of the FDCPA, include, but are not limited to, in their course to collect a debt from the Plaintiff, Defendants demanded money from the Plaintiff with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, despite numerous requests by the Plaintiff to do so. Thus, the Defendants know that they did not have the authority to demand money or collect money from the Plaintiff.

118. There was no agreement in place to authorize the collection of this alleged debt by the Defendants. The balance disclosed to the Plaintiff was clearly not an amount authorized by an agreement creating the debt.

119. Defendants' violations of § 1692f(1) of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees. *See, 15 U.S.C. § 1692k*.

120. Defendants' actions committed in violation of § 1692f(1) caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, anxiety, out-of-pocket expenses and attorney's fees.

121. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of § 1692f(1) of the FDCPA, Plaintiff was damaged in that he, among other things, suffered stress and anxiety as a result of Defendants' abusive attempts to collect a debt.

122. Defendants' violations of § 1692f(1) of the FDCPA render them liable for actual damages, costs, and reasonable attorneys' fees. *See* *15 U.S.C. § 1692k(a)(1)*.

123. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him because Defendants engaged in behavior which was harassing or abusing to Plaintiff or otherwise engaged in acts or practices that were unfair or deceptive towards Plaintiff.

## COUNT VIII
## Violations of the New York General Business Law § 349

124. Plaintiff adopts and realleges the foregoing as fully stated herein.

125. Under New York General Business Law §349(a), deceptive acts or practices in the conduct of any business conducted in the State of New York are unlawful.

126. It is the regular business practice of Defendants to harass consumers in an abusive manner as a means to pressure the alleged debtor. Defendants engaged in such a deceptive practice aimed at other New York consumers. Defendants' actions have a broad impact on New York consumers at large.

127. It is the regular business practice of Defendants to demand money from consumers with the knowledge that the chain of title was never established to allow the purported holder of the note in due course to establish title, as a means to pressure the alleged debtor. Defendants engaged in such deceptive practice aimed at other New York consumers. Defendants' actions have a broad impact on New York consumers at large.

128. That Defendants have a pattern of collecting debts with the knowledge that they did not have the authority to demand money or collect money from consumers.

129. That Plaintiff is a reasonable consumer within the meaning of the NY GBL.

130. By unlawfully harassing Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress, humiliation, out-of-pocket expenses and attorney's fees.

131. By unlawfully seeking to collect a debt from Plaintiff, Defendants caused Plaintiff to suffer actual injury in the form of emotional distress, anxiety and humiliation.

132. As a direct and proximate result of Defendants' deceptive acts and practices committed in violation of New York GBL § 349, Plaintiff was damaged in that he, among other things, suffered stress, humiliation and anxiety as a result of Defendants' abusive attempts to collect a debt.

133. Defendants' violations of § 349(a) of the NY GBL render them liable for statutory damages, costs, and reasonable attorneys' fees pursuant to NY GBL 349(h).

134. Plaintiff requests that Defendants be enjoined from attempting to collect the debt alleged to be owed by him, by engaging in behavior which is harassing or abusing to Plaintiff or otherwise engaging in acts or practices that are unfair or deceptive towards Plaintiff.

## CLASS ALLEGATIONS

135. The causes of action are brought on behalf of Plaintiff and the members of a class.

136. The Class consists of all persons whom Defendants' records reflect resided in the State of New York and who obtained home equity lines of credit from Indymac Bank (a) home equity lines of credit were purportedly transferred to OneWest Bank FSB, (b) CIT Bank NA claimed ownership of the home equity line of credit; and (c) LoanCare became sub-servicer of said home equity lines of credit, (d) never establishing chain of title to allow

the purported holder of the note in due course to establish title, and (e) for conducting unfair practices to attempt to collect a debt by means of duress and coercion.

137. Pursuant to Federal Rule of Civil Procedure 23, a class action is appropriate and preferable in this case because:

a. Based on the fact that foreclosure actions that are at the heart of this litigation were fraudulent and illegally initiated, the class is so numerous that joinder of all members is impracticable.

b. There are questions of law and fact common to the class and these questions predominate over any questions affecting only individual class member. The principal question presented by this claim is whether the Defendants violated the FDCPA by failing to follow appropriate procedures.

c. The only individual issue is the identification of the mortgagees who were listed as Defendants on fraudulent foreclosure actions initiated by the Defendants on behalf of the Trust, (i.e. the class members), a matter capable of ministerial determination from the records of Defendants.

d. The claims of the Plaintiff is typical of those of the class members. All are based on the same facts and legal theories.

e. The Plaintiff will fairly and adequately represent the class members' interests. The Plaintiff has retained counsel experienced in bringing class actions and collection-abuse claims. The Plaintiff's interests are consistent with those of the members of the class.

138. A class action is superior for the fair and efficient adjudication of the class members' claims. Congress specifically envisions class actions as a principal means of enforcing the FDCPA 15 U.S.C. § 1692(k). The members of the class are generally unsophisticated

individuals, whose rights will not be vindicated in the absence of a class action. Prosecution of separate actions by individual members of the classes would create the risk of inconsistent or varying adjudications resulting in the establishment of inconsistent or varying standards for the parties and would not be in the interest of judicial economy.

139. If the facts are discovered to be appropriate, the Plaintiff will seek to certify a class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure.

140. Foreclosure actions, such as those initiated by the Defendants are to be evaluated by the objective standard of the hypothetical "least sophisticated mortgagee."

## **PRAYER FOR RELIEF**

Plaintiff, Christopher Gross prays that this Court:

1. Grant an order certifying the proposed class herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

2. Create a common fund available to provide notice of and remedy Defendants' violations;

3. Declare that Defendants violated the FDCPA;

4. Enter judgment in favor of Plaintiff and against Defendants, on each and every count,  for actual damages, costs and reasonable attorneys' fees as provided by § 1692k(a)(1) of the FDCPA;

5. Enter judgment in favor of Plaintiff and against Defendants, on each and every count, for statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA;

6. Enjoin Defendants from collecting or attempting to collect any debt from Plaintiff pursuant to NYS GBL Section 349.

7. Enter judgment in favor of Plaintiff and against Defendants for damages, costs and reasonable attorneys' fees for violating NYS GBL Section 349.

8. Grant such further relief as deemed just.

## JURY DEMAND

Plaintiff, Christopher Gross demands trial by jury.

Respectfully submitted,

Dated: June 28, 2021

**LAW OFFICE OF ABEL L. PIERRE, ATTORNEY-AT-LAW, P.C.**

Attorney I.D.#AP-5508
140 Broadway, 46th Floor
New York, New York 10005
Telephone: (212) 766-3323
Facsimile: (212) 766-3322
abel@apierrelaw.com

**Attorney for Plaintiff**